Haynes, J.
A petition in error is filed by the plaintiff for the purpose of reversing a judgment of the court of common pleas rendered in a case wherein Catherine S. Fisher was plaintiff, and these defendants in error were defendants. The petition in the common ple^s was originally filed by plaintiff against George "R. Schultz and Washington W. Tryon, alone, and it set out, among other things, that said city was a municipal corporation and that certain streets in said city crossed each other; “that on the 22nd day of September, 1894, the defendants entered upon said St. Clair street, a little northwesterly of where it intersects with Monroe street, and removing the paving stones upon one side of said street, did excavate a large and deep hole in said street, for the purpose of making some kind of water or gas-pipe connection or otherwise, the exact nature of which to plaintiff is unknown.” It then states the duty of defendants in regard to the excavation; that “they negligently, wrongfully and carelessly, after making the said excavation in the roadway of said street, and while at work-thereat, failed to place either barriers or lights in, around and by the same, and left the same open and exposed in the night season of said day when it was dark, in such wise that persons passing upon and along said street, upon foot and in vehicles, were liable to fall therein, and be thereby greatly injured, as defendants well knew, or by the exer *543 cise of reasonable care might have known.” It then sets out that upon said day and in the evening thereof, the plaintiff was being carried, with her husband and her sister, in a carriage from the Boody House, in the city of Toledo, to the Michigan Central Railway Company’s depot in Toledo, along said street, and that while being so carried along said'street, ‘‘one side of said carriage suddenly dropped, down into said hole so made by defendants, throwing plaintiff forward and severely bumping and injuring her body, cutting and bruising her forehead above one eye, so that tlie same was caused to bleed profusely, Thereupon plaintiff, with the other occupants of said carriage, got out therefrom and were helped by plaintiff’s husband to the-sidewalk. It was very dark at said time, and neither plaintiff, nor her companions were able to see or distinguish the surroundings. After said carriage had been lifted up and moved forward, plaintiff’s husband came to plaintiff and undertook to assist her to again re-enter the said carriage, and while plaintiff was proceeding from where she was standing on the sidewalk to where said carriage was located, plaintiff suddenly stepped off into space, and was thereupon precipitated and thrown into the said deed hole then and there existing in the above part of said street as aforesaid. Said hole was about eight feet deep, and plaintiff fell to the' bottom thereof, falling against" and striking her body against the sides and bottom of the same, to her great in-j’ury and damage as hereinafter stated. It then proceeds to state the injuries that she received.
Subsequently, by leave of court, plantiff filed an amendment to her petition making the Toledo Transfer Company a party to the action, and in regard to that she says: ‘‘That .the Toledo Transfer Company is a corporation duly organized under the laws of the state of Ohio, and carrying on a general hack and vehicle transfer business in the city of Toledo, Ohio. Since filing her petition in this cause, the
*544 plaintiff has been informed and believes that the said The Toledo Transfer Company is a proper party defendant herein, by reason of its negligence in connection with the injuries inflicted upon and sustained by plaintiff as set forth in her petition. Upon the night of the 22nd day of September, 1894, when plaintiff was being transferred in a carriage upon and along St. Clair street, in the city.of Toledo, from the Boody House Hotel, to the Union Railway Station, in said city, as set forth in the petition, she employed for that purpose the defendant, The Toledo Transfer Company, who was then and there a common carrier of passengers, to carry and transfer her from said Boody House to said Railway Station. And in pursuance of said contract of carriage, plaintiff was riding in a carriage or hack of said The Toledo Transfer Company at the time she received her injuries, as set forth in the petition. As such carrier of the plaintiff, it was the duty of said The Toledo Transfer Company to carry plaintiff safely and without harm,and deliver her at the said railway station. In that behalf it was its further duty to have its agent driving the carriage in which the plaintiff was riding, keep a constant, prudent and careful lookout, ahead of said carriage, to see and to avoid any obstructions or excavations that might be in and along the way over which said carriage was to pass. And yet the agent of the said defendant who was driving said carriage, did not so keep a constant, prudent and careful lookout upon the street along which he was driving; but on the contrary, negligently, wrongfully and carelessly, without the exercise of ordinary or reasonable care, drove the said carriage into the hole or excavation made in said St. Clair street,as described in the petition. Plaintiff is now informed and believes that the said agent of The Toledo Transfer Company did not exercise ordinary and reasonable care to observe and avoid the said excavation in said street, or take warning thereof so as to avoid the same; but did drive his *545 said carriage so that the wheels thereof ran into the large hole excavated in St. Clair street as aforesaid, thereby proximately conducing to all the injuries and sickness and damages sustained by the plaintiff, as in her petition described.”
Tryon, in his answer- — niter making general denials'— says that he is the lessee of a store-room situate on the southeasterly corner of Monroe and St. Clair streets: “That in connection with his said business, and for the purpose of furnishing power to propel certain appliances used in and about said store, he has, and at the happening of the events hereinafter set forth, had in operation in his store, a water motor, which was furnished and supplied with water from the water main in St. Clair street, said water main being owned by the city of Toledo. That on or about the 22nd day of September aforesaid, there was a leak in his service pipe; that to prevent damage to property it was necessary to have it repaired immediately, and he employed the defendant, George B. Schultz, to repair-it. That said George B. Schultz is, and was at that time a plumber, engaged in such work, and who was regularly licensed and authorized by the said city of Toledo to perform such work, and to make the necessary excavations in the streets for the purpose of doing! the same, That thereupon said George B. Schultz proceeded to repair said pipe, and in so doing, it became and was necessary for him to make an excavation in order to reach said pipe where the same was broken and leaking, and also at the point or place, where said service pipe was connected with said waierpipe in St, Clair street. The said last-mentioned excavation was at the only point where the water could be turned or shut off from said service pipe while said repairs were being made, and that it was necessary for said water to be so shut off before said repairs could be made. This defendant further says that he in no wise directed, controlled, supervised or managed, *546 and that he in no wise attempted to direct, control or manage or supervise the mode or manner of making said repairs, or in making the excavation necessary in and about the carrying on of said work. This defendant further says that he made a contract with said defendant, George B, Schultz, to make said repairs, but that in making such repairs said Schultz was not under, or subject to any direction or authority from this answering defendant as to how or in what manner said work should be done.”
The defendant George B. Schultz filed an answer himself, and it is mainly a denial of any negligence. The main part of it is that he denies that the excavation was not properly lighted and cared for, and he avers that if the plaintiff drove into the hole, she drove into it of her own negligence.
The defendant Transfer Company answering, admits that these parties were being transferred; admits that these holes were dug there, and says: ‘‘It admits that said defendants, Schultz and Tryon, did wrongfully, negligently and carelessly, after making the said excavation in the roadway of said street, and while at work thereat, fail to place either barriers or lights in, around and by the. same, and left the same open and exposed in the night season of said day when it was dark, in such wise that persons passing along and upon said street upon foot and in vehicles were liable to fall therein and be thereby greatly injured, as said defendants Shultz and Tryon well knew, or by the exercise of reasonable care, might have known. That admission is in the language of plaintiff’s petition.
A joint reply was filed by the plaintiff in the case. The petition having been filed in March, 1895, Schultz’s answer was filed in March, 1895, and the answer of Tryon filed in March, 1895, and the amendment to this petition, mal ing other parties, in April, 1895; service was had upon the Transfer Company at that time, and it filed its answer March 17th, 1897. This joint reply was filed on the 22nd day of March.
*547 It appears in the journal entry that, upon ¡motion of the defendant Transfer Company, the reply itself was stricken from the files. It appears in the bill of exceptions, that it was stricken from the files, for the reáson, as stated, that the reply did not conform to the order of court. That being stricken off on the 22nd, the plaintiff was allowed to immediately file separate replies thereto, and on Ihe 24th of March, two days thereafter, he did file separate replies to the answers of the several defendants.
Trial was commenced on the 20th of March, 1897, and continued until a verdict was rendered, occupying, I think, a couple of days. '
Borne objections were made to the introduction of testimony by the parties, but nothing that affects materially the plaintiff. The testimony was given and the case then submitted to the jury, after the charge of the court, and most of the errors that are complained of arise from the charge given by the court to the jury. There is a general allegation in the motion for a new trial that the verdict is against the evidence, and it is said in the petition in error, that one of the greatest errors is that the court erred in overruling the motion for a new trial.
The testimony as it was offered by the various parties, shows substantially this state of facts: That this lady, with her husband,resided at Ypsilanti,in the state of Michigan) and had been on a visit at Tiffin, Ohio. They came into Toledo on the afternoon of the day stated in the petition, arriving about four o’clock, over the Pennsylvania road arid were carried by one of the .hacks of the Transfer Company,from the Pennsylvania Depot to the Boody House, and at that time an order was given by the husband of the plaintiff,that the hack return for them at 8 o’clock,or a little after, to take them from th6 B'oody House to the Michigan Central Depot — 'the Union Depot. The hack did return, and it was while passing along the street on their way to *548 said depot that the accident occurred. The testimony on the part of the plaintiff, in regard to the condition of affairs, so far as she and her husband observed them, at this point, was that there were no lights at the place were the accident occurred, and that it was very dark, and that, as they were riding along, the carriage — as the husband thinks — turned a little to the left, and suddenly one side of the fore part of' the carriage dropped down a little distance and thereupon his wife was thrown forward — be being seated with his back toward the horses, and the lady on the hind seat — and hit a portion of her body,and also her forehead, against her husband, cutting her head, as the husband testifies, so that the-blood ran down one side of her face, and there being perhaps some bleeding at the nose. He testifies that he then opened the carriage door, upon the right hand side, and all the parties got out and went towards the sidewalk on the-westerly side of the street; that in a very few moments the driver said to these parties “Come on;” and they started to-walk over- — -the wife and her sister walking together, and the husband standing very near the carriage. Several parties had in the meantime gathered around the place where-the accident had happened, arid as the plaintiff and her sister passed through the crowd, Mrs. Fisher suddenly went down into this hole in the street,and received additional injuries.
The testimony on the part of the Transfer Company tends-to show that when the wheel went into the hole, the driver was pitched off upon the earth lying alongside of the hole;, that he got up, and one or two persons came and lifted up-his carriage; that when they did so the husband was standing by, and said: “Can we reach the depot?” That the-driver took out his watch and said “Yes”; that he had fourteen minutes; that Mr.Fisher thereupon called to his wife to-come over, and she came across and he opened the door and they got in, and, according to his testimony he .didn’t see *549 anything of the falling into the hole, or of the lady being lifted from the hole. They then got into the carriage and started towards the depot, and then the husband ordered the driver to drive back to the Boody .House, which he did, where the parties remained until the next night, and then returned home.
The testimony on the part of Schultz and Tryon is, that a light was placed on this hole about five o’clock in the evening, and remained there until about eight o’clock, and was burning when Mr. Schultz went to his supper, the work being then completed with the exception of filling up the excavation. That when he returned, just after the accident occurred, the light, was not burning and the lant ern was lying there somewhere. It appears from the testimony of the boy who was a helper there, that he was in the hole where the repair had been made,and that hole, according to the testimony, was situated within the curb line, between the curbstone and the sidewalk, on the easterly side of the street; and Harry Schultz, a son of defendant Schultz, had come over to where he was for the purpose of getting a light, a few moments before the accident, and lighted his candle there by the other party’s candle, and went back to the hole in the street. Just where Harry Schultz was at the time of the accident, does not perhaps appear, except inferentially. He was present in court at the trial, but was ■'not called by either party. It is said that he lighted his candle for the purpose of getting down into the hole to turn on the water; and the young man in the other hole testifies that the water was turned on, and he remained there to see that it worked right. It is claimed in argument that Harry Schultz had taken this lantern' — 'his own light having gone out — for the purpose of lighting himself into this hole and to turn the water into the service pipe; but that does not appear very clearly — M least no parties appear to have been there at the time of the accident except the driver, and probably this son of Schultz.
*550 The jury evidently found that at the time of the accident, the light was not burning upon the embankment; that there was no light or guard there at that time, and they returned a verdict of $1200 against Schultz, a verdict for the defendant Tryon and for the defendant Transfer Company. It is for the purpose of reversing this judgment in favor of Tryon and the Transfer Company that the petition in error is filed.
I will say here, that on reading the testimony, it appears to U3 that if the jury took that view of the facts in the case, that the verdict is in accordance with the probabilities. We think it very probable that while a lantern had been put on the dirt pile about five o’clock, for some reason, it was not there at the time of this accident.”
I have stated these matters very fully, for the reason that they throw light upon the charge of the court, and I will examine that charge to see whether the law was or was not correctly laid down by the court. Part of the charge was as follows:
“Next as to the defendant, The Toledo Transfer Co. This branch of the case also presents some peculiar features. I will first read and give to you as the law of the case to be applied by you, the special instructions Nos. 1 and 2, which have been requested in behalf of the Transfer Company.”
“1. The jury is instructed that as between the plaintiff and the defendant The Toledo Transfer Company,all of the allegations of the petition admitted by the answer of said defendant are to be taken as between the plaintiff and said defendant as true, notwithstanding any evidence that may have been received as to any of the facts so alleged and admitted.”
“2. The jury is instructed that as to the defendant The Toledo Transfer Co., an excavation was made in said street by persons other than the Toledo Transfer Company, and that the same was left open and exposed in the night season of the day of said accident, when it was dark, in such wise that persons passing along and upon said street, upon foot *551 and in vehicles, were liable to fall therein. That the person or persons so making said excavation in the roadway in said street, and while at work thereat, failed to place either barriers or lights in, around and by the same. That it was very dark at said time, about the hour of 8-35 P. M. of said day, and neither plaintiff nor her companions were able to see or distinguish the surroundings. That each and all of the above statements of fact, are to be taken and considered as facts, of course solely upon the issue between the plaintiff and the Transfer Company, notwithstanding any evidence which may have been received in this case tending to-contradict the same.”
One of the peculiarities of the case is, that by the introduction of the defendant Transfer Company into the case, this has brought, in my judgment, several causes of action into one single cause of action: The liability of the defendants Schultz and Tryon upon the fact as to whether or not they had caused this excavation to be dug in the street and left it without any proper barriers or lights or warning. The liability on the part of the Transfer Company that there being a hole in the street — no matter how the hole came there — whether by the action of man, or natural causes —there being a dangerous hole in the street, the driver carelessly and negligently drove into the hole, and as a result of it, the plaintiff was injured. Now in order to establish the negligence of Tryon and of Schultz, it was necessary to make the averment that there was no light — no protection — 'to this hole, and that it was dark, so that it could not be seen; and, as I said before, the testimony of the plaintiff was very strong upon that point. In order to establish the liability of the Transfer Company, it was necessary to show that it was light at the time of this accident, that it was light — ^o that the driver could see — so that he ought to have seen — might have seen- — this excavation. Now the plaintiff files a petition against Schultz and Tryon and alleges, in strong language, that there was no light at this point; no barrier, and that it was very dark. Afterwards *552 he filed an amendment to his petition and made The Toledo Transfer Company a party, leaving the allegation just as it was in regard to the lights and the condition of affairs at the excavation or hole, and said that the defendant negligently drove into it,that is,the driver of the' Transfer Company. In the answer of Tryon, he denied that there were, no lights there,-and practically stated that there was, and Schultz also; but in the answer of the Transfer Company they admit the allegations of the petition, almost substantially in the language of the petition itself, and planted themselves upon it, and stood upon it, and it was with regard to these allegations that this charge of the court was made and exceptions taken.
We suppose there is nothing better established than that the solemn allegations of a party in his pleadings in a case are to be taken as conclusive against him. He was bound to state the facts of his case; and he did state them as he supposed them to be true and correct, and by those he was bound. It was argued that he was entitled to the allegations made in the answer of Tryon; but we think that that position is not well taken. The suit is against all of these parties; that all of them have in some form united in joint wrong, were parties to it — the allegation is that these parties were tortfeasors. A judgment may be rendered in favor of either or against either of these parties,and they are each of them entitled to their own separate defenses according to the facts which are alleged against them, and the defense of this Transfer Company was — 'that it was dark at that point,and the driver not able to see. The misfortune is that it was joining inconsistent actions in the same cause of action and tried in the same case. We are clear that the charge of the court was right, and that no error intervened in giving the charge.
Now, in regard to the defendant Tryon, an exception is taken to the charge given by the court in respect to him. *553 The plea that he had made was, practically, that he had let ihe work to Schultz, who was an independent contractor; that he himself had retained no power or control over the ■actions of Schultz, and gave no directions in any manner or form whatever, and that Schultz was a person who was licensed by the city of Toledo to make connections with the water-works of the city, and testimony is offered to show that persons were prohibited from in any manner interfering with the water-works, under penalties, unless by the ■consent of the proper authoritiess, or unless they had a license from them. I vill read the charge in regard to Tryon. It is a little long, but it is necessary to give it in order to understand it fully:
“Next as to the defendant Tryon. If you do not find from the weight of the evidence that the defendant Schultz, •or any of his employes, was negligent in the respect alleged, then there is no liability upon the part of the defendant Tryon, and in that case your verdict must be in his favor also. The plaintiff seeks to recover or to hold the defendant Tryon liable for the negligence of Schultz; therefore,if the proof fails to show that Schultz or any of his employes were negligent, or if it fails to prove that the injury resulted from such negligence, then no recovery can be had against Tryon; but if you find from the' weight of the evidence that Schultz is liable for the injury, then you will •determine whether or not Tryon is liable. In order to entitle the plaintiff to recover against the defendant Tryon, it must be shown by the weight of the evidence that is admissible in this case against the defendant Tryon: (1) That Schultz was negligent in not having the excavation properly lighted or protected at the time of the happening of the accident; (2) that under the law which I will explain to you hereafter, Tryon is liable for the negligence of Schultz; and (3) that such negligence was the proximate cause of the injury. It is one of the many peculiar features of this case that certain evidence has been introduced against the defendant Schultz which is not admissible and cannot be considered by you as against the defendant Tryon. Without stopping to explain why this is so, I will read and give you *554 an instruction referring to that evidence which has been, requested on behalf of the defendant Tryon. It is request No. 8:
“In determining whether said excavation was properly lighted or protected at the time of the accident, you will not, as against the defendant Tryon, consider any evidence relating to any trial which may have been had against the defendant Schultz in the police court of this city with reference to this accident, nor will you consider as against the-defendant Tryon any testimony that was given before you as to what any witness or witnesses testified to in said trial of the defendant Schultz in the police court.
“With the exception of the testimony that is referred to-in that instruction, you will consider as against the defendant Tryon all the evidence in the case bearing upon the subject, and determine whether or not Schultz was negligent in not having the excavation properly lighted or protected at the time of the accident.
“Let me repeat: in determining whether Tryon is liable, you will consider all of the evidence as to Schultz except the testimony in the police court in that connection. I need not repeat what I have already said as to the defendant Schultz upon that subject. If you do not find as against the defendant Tryon that the defendant Schultz was negligent, then your verdict must be in favor of Tryon. But if you find that as against the defendant Tryon that Schultz was negligent, and that such negligence was the proximate cause of the injury, then you will consider the remaining-question as to Tryon, and that is, whether Tryon is liable for the negligence of Schultz. It appears from the pleadings- and evidence that Tryon was the lessee and occupant of the store upon the northeast corner of Monroe and St. Glairstreets; that the service pipe which was connected with the water-main in St. Glair street, and which supplied his premises with water, leaked; that he employed the defendant Schultz to repair the leak, and that for this purpose it was necessary for Schultz to make an excavation in the-street. And it further appears that Tryon did not reserve-to himself any direction or control over the mode or manner in which Schultz was to do the work. Upon these undisputed facts Schultz was to do this work which he was- *555 employed by Tryon to perform,as an independent contractor — what is known in law as an independent contractor. He was not the agent of Mr. Tryon, or servant of Tryon, in doing the work. And the question arises: Under what circumstances, if any, Tryon is liable for the negligence of Schultz, or his employes, in the performance of the work as I have said, the defendant Schultz being an independent contractor. Ordinarily, and as a general rule, one who causes work to be done is not liable for injuries that result from carelessness in its performance by the employe of an independent contractor to whom he haslet the work without reserving to himself any control over the execution of it, but that principle has no application when the injury is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case, that is, where the injury is one that might have been anticipated as likely to result from the perform- ’ anee of the work if reasonable care was omitted in the performance of it — Ihe person causing the work to be done will be liable, though the negligence is that of an employe of a independent contractor. The defendant Schultz being an independent contractor, the defendant Tryon is not liable for his negligence or the negligence of his employes, unless, to the knowledge of Tryon, the performance of the work which he employed Schultz to do,necessarily tended to expose persons to injury if the work was nqt properly guarded. If, therefore, the injury in this case resulted from the negligence of Schultz or his employes, and if Tryon had reason to anticipate the injury as a-direct and probable consequence of the work Schultz was employed to perform provided the work was not. properly guarded, then Tryon is liable for the negligence of Schultz. But if the injury did not result from the negligence of Schulz, or if Tryon had no reason to anticipate that such an injury would result from the perform■ance of the work if reasonable care was omitted in the performance of the work, then Tryon is not liable. I shall leave it to you, as a question of fact in the case, whether or not the performance of this work necessarily tended to expose persons to danger if it was not properly guarded, and *556 whether or not Tryon might reasonably have anticipated the injury as liable to result from the performance of the work if it was not properly guarded. You will consider the nature of the work, what it was, where it was to be performed, whether the excavation in the street was necessary for the performance of the work which Tryon employed Schultz todo, viz: the repair of the pipe; what the defendant Tryon knew about the subject, and all the evidence.”
The main objection to this part of the charge is that portion where it says Schultz was an independent contractor, and in regard to what Tryon should anticipate as to the danger of the work to be done. The supreme court of this state has made decisions touching the questions under discussion. In the 8 Ohio St., in the original case of Clark v. Fry, which stood as the law of the supreme court for twenty years, they held that where work was placed in the hands of an original contractor to perform the work, that the owner of the building was'not liable, The supreme court say in the case in 49 Ohio St,, 69, that they do not intend to and do not disturb the decision of the supreme court in that case, or the law as there laid down as applicable to the facts of that case; and that was a case from very near where this accident occurred, on Summit street in this city, where a building had been let to a contractor who had been placed in possession of the property, who was to furnish the materials and erect the building, and as a part of the plan of the building, and necessary in the erection of it, an area was dug extending a few feet into the sidewalk, and while it was being excavated and the earth piled around it, the plaintiff, Fry, came along and fell in, and the court held that the owner of the building, Clark, was not liable. The whole doctrine was discused at that time in regard to nuisances and these various questions,
In this case in 49 Ohio St., Hawver v, Whalen, p. 69, which occurred in Ceveland, the owner of the property had caused an excavation to be made for a building,'1 and had *557 entered into a contract with parties to erect the walls of the building and to do the mason work and the area, and while they were performing that work upon the area, and perhaps had got the wall substantially completed, a board which had been placed over it for people to pass upon, had become removed, and the plaintiff stepped down into the hole, and was injured. The supreme court held in that case that inasmuch as the excavating was being done by the owner himself,he was not exonerated from the fact that he afterwards employed another person to furnish the material and do the mason work of building the area.
There is a case in 47 Ohio St. 207, where a railroad company was mating an excavation clear across the street,and in that case the supreme court held that the company was liable. And they say in this case of Hawver v. Whalen that they do not dispute the proposition as laid down by the supreme court in Clark v. Fiy. The distinction is, that in one case the whole work was in the possession of the contractor, and in the other the hole itself had been excavated by the owner of the building, and he afterwards let the work of erecting the walls around the hole to an independent contractor.
Now it seems to us that is the distinction made in this case, and, upon the facts of this case, the charge of the court was right in this case. The work which was to be done here — as the work in the Fry case — the main portion of it, was to be done within the curbstone, and not in the street itself — not in-the roadway. At the point where the water is let on, there came a leak, and the water was running out at that point, and was escaping down the street and into the building, and was liable to create a good deal of damage. The city had passed an ordinance which did not permit any person to touch the water pipes except by the consent of the proper authorities, and under that ordinance plumbers were authorized to whom was given authority to enter upon the streets and tap the water pipes. This party *558 had given bond to the city of Toledo, in the sum of a thousand dollars, to save it harmless from all damages, and thereupon he was permitted in the exercise of his authority to enter upon the streets and tap the water pipes. The business he was to do for Mr. Tryon was to get to this point and fix the water-pipe. In doing that, it became necessary .for him to shut the water off from the pipe that connected with the building, and, in order todo that, it became necessary to dig this hole in the street, but the main work was done at the other point. The court charged that if the party might anticipate damage and injury accruing to the public, Tryon might be liable — under those circumstances. Upon that charge the jury found in favor of Tryon. Now the law laid down by the court in that particular case is almost in the language of the syllabi in the above cases in 47 and 49 Ohio St.' — fit is what a party may anticipate, or ought reasonably to anticipate, may occur if proper care is not used; that is to determine the liability of the party. So, in that respect, we find no error in the charge of the court.
Now there is another .thing in regard to the charge against the Transfer Company. The court says — among other things: “And whether or not the driver was negligent, depends upon what was his duty under the circumstances, and whether he failed in the performance of his duty. It was the duty of the driver of the carriage while driving along upon the street, to keep a prudent and careful lookout ahead of him, and to use all reasonable care to avoid obstructions and excavations in the street; that is,such care as an ordinarily prudent person in his situation and under the circumstances surrounding him, is accustomed to exercise. He had the right to assume while driving along upon the street that the street was free from obstructions and excavations, but that right did not relieve him from the duty of using proper care to avoid excavations in the *559 street. If he did not know of this excavation, and by the exercise of reasonable care could not have known of it, then he was not in fault. The inquiry then will be, there being, as to the Transfer Company,no signal light to warn the traveler of the excavation, and the other facts existing which are admitted by the pleadings, did the driver see the hole, or might he have seen it by the exercise of reasonable care, in time to have avoided driving the carriage into the hole? What did he actually see; or what, by the exercise of reasonable care, might he have seen? In order to entitle the plaintiff to recover from the defendant the Transfer Company, it must be shown by the weight of the evidence that the driver of the carriage was negligent, and that his negligence was the proximate cause of the injury. And in determining whether the driver was negligent, you will consider the facts alleged in the petition which are admitted in the answer of the Transfer Company, and only such parts of the evidence in the case as relates to matters or facts not so alleged and admitted.”
Now it is claimed on the part of plaintiff in error,that the charge is not strong enough'in favor of the plaintiff — 'that it is not stringent enough in regard to the duties of the Transfer Company. It is argued that the Transfer Company is a common carrier of passengers, and that the obligation or degree of care that they should exercise was the highest degree of care. In regard to the character of that company, it is averred in the petition that it is a hack and transfer company, and at another point it says that it is and was a common carrier of passengers. The answer admits that it is in the business of driving hacks for the purpose of transferring people about the city, but denies that it is a common carrier — that is, it denies' generally all other allegations.
Quite $n extensive brief has .been filed, and we have examined a great many authorities in regard to the matter. *560 Even in regard to common carriers, there is a great variety of opinions in decisions of different courts; some courts laying the degree of negligence substantially in accordance with that laid down in this case, and others perhaps stronger. The rule is laid stronger in regard to carriers that carry persons by the means of powerful agencies, like railroad cars, than as to those which carry by horses and carriages. Some difference is made between carriers and private individuals who carry; but, after examining these various authorities and the facts of this case,under the allegations of plaintiff’s pleadings alleging that the driver did not use ordinary and reasonable care, and so pleading negligence the driver of this hack — we think that the charge of this court was correct, and was strong enough, and that there was no error in regard to that.
There is another point in the charge in regard to this liability. It will be observed that this carriage went into this hole,and this lady was precipitated against her husband, and was injured. They then got out of the carriage and went to the sidewalk, and in coming back — whether in obedience to the call of the driver or in obedience to the call of the husband, is in dispute — but, at any rate, the woman started to come back to the carriage; the petition avers that her husband was with her, but it ^appears from her own testimony that he was not — that he stood by the driver,and she stood by the sidewalk — and she started to;®gol|back to the carriage, in company with her sister, and as they pushed through the crowd to do so, she stepped downjinto the hole.
The charge of the court was, that if they found against all of the defendants, the jury could only find in this particular case the damage which resulted from acts of all the defendants, to-wit, the combined act of all the defendants in leaving the hole unguarded and the carriagejnegligently going into the hole, which might exclude any damages *561 which might have arisen by her afterwards from having walked into the hole herself.
Hurd, Brumback & Thatcher, for Plaintiff.
Doyle, Scott & Lewis, for The Toledo Transfer Oo.
B. H. Reno, for George B. Schultz.
King & Tracy, for Washington W. Tryon.
Without discussing the question further, we think the law was rightly given on that. The court took the pleadings as he found them, and they asked for a joint judgment against all the defendants, and the plaintiff in recovering such a judgment must have recovered it upon the facts set forth for damages to which all the defendants contributed.
We think it Sufficient to say we have discussed all the points which have been made by the brief, and have read and re-read this evidence, and we are of opinion that no error appears in the charge of the court, and that the verdict of the jury is sustained by .the evidence. The judgment will therefore be affirmed, but without penalty against Schultz.